**In re the MARRIAGE OF Yvonne R. GUNDERSON, Petitioner, Respondent,**

**v.**

**Kenneth R. GUNDERSON, Appellant.**

**No. C3–86–1334.**

Court of Appeals of Minnesota.

Jan. 20, 1987.

Review Granted March 18, 1987.

Michael J. Talarico, Duluth, for respondent.

Arthur M. Albertson, Duluth, for appellant.

Considered and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Kenneth R. Gunderson appeals from an order denying his motion to terminate his maintenance obligation to respondent Yvonne R. Gunderson (n.k.a. Yvonne R. Sheridan) following her remarriage. The trial court ruled that the dissolution decree,

entered pursuant to the parties' stipulation, unconditionally provided for rehabilitative maintenance for a period of 42 months and that remarriage of his former wife did not extinguish appellant's obligation. We affirm.

## FACTS

The 25–year marriage of appellant and respondent was dissolved in April, 1984. At the time of dissolution, respondent was 43 years old and employed as a salesperson, but the position had yet to produce any net income. Respondent also suffered from medical and psychological problems which prevented her from becoming self-supporting at that time. She had begun occupational retraining, however, and expected to become fully self-supporting within three years.

Appellant was 45 years old at the time of dissolution and employed as a police officer. He earned a net monthly salary of $1,367 and became eligible for a monthly service pension of $845.09 on March 15, 1985. The parties were parents of three children, all emancipated at the time of dissolution.

The parties' marriage was dissolved by stipulation, orally stated on the record, at a pretrial conference on March 29, 1984. Both parties were represented by counsel. The stipulation, incorporated into the judgment and decree, included a directed sale of the homestead with equal division of net proceeds estimated at $16,000 to each party, division of personal property, and division of Gunderson's pension upon his retirement. The decree also provided:

9. That [appellant] shall pay to [respondent], for and as rehabilitative maintenance, the sum of $300.00 per month, commencing May 1, 1984, and continuing for 42 months thereafter. That upon expiration of the said 42 month period, all further maintenance shall be terminated. Said monthly payments shall be made in two equal installments on the 1st and 15th of each month, and shall be paid directly to [respondent].

Respondent remarried on February 2, 1986. Appellant then moved the court to terminate his rehabilitative maintenance obligation effective February 1986. In denying the motion, the trial court found:

4. That upon examination of the transcript of the hearing in the above matter on March 29, 1984, and upon the clear language of the Judgment and Decree, it is obvious that the parties had intended that said 42 months of maintenance be paid and said payments were unconditional and to terminate, absolutely, at the expiration of said 42 month period.

5. That on February 2, 1986, the [respondent] remarried. That, although, [respondent] relates information relative to her financial situation since the dissolution and in connection with her remarriage and the financial situation of her new husband, such factual information is not relevant to the issues presented to the Court.

6. That the only issue presented to the Court is whether or not by said stipulated agreement and the concurrent entry of supporting Findings of Fact and the Conclusions of Law in the Judgment and Decree entered April 12, 1984, spousal maintenance was to terminate upon remarriage or was to be continued, absolutely, for a period of 42 months succeeding May 1, 1984. *The Court specifically finds that said rehabilitative spousal maintenance payments were unconditional, agreed upon, and was to be paid for said 42 month period and that it is obvious that remarriage of the [respondent] is not an operational event under Minnesota Statutes which would terminate said obligation for rehabilitative spousal maintenance.*

(Emphasis supplied.) Appeal is taken from this order.

## ISSUE

Based on the limited record before us, did the trial court err in denying appellant's motion to terminate his maintenance obligation?

## ANALYSIS

■ When a stipulation fixing the respective rights and obligations is central to an award of maintenance contained with a dissolution decree, "the trial court reviewing the original order or decree should view it as an important element because it represents the parties' voluntary acquiescence in an equitable settlement." *Claybaugh v. Claybaugh*, 312 N.W.2d 447, 449 (Minn. 1981). Moreover, "a stipulation cannot ordinarily be repudiated or withdrawn by one party without consent of the other party except by leave of the court for cause shown." *Anderson v. Anderson*, 303 Minn. 26, 32, 225 N.W.2d 837, 840 (1975).

Appellant contends that notwithstanding the parties' stipulated agreement, his maintenance obligation should have been extinguished because respondent failed to overcome the statutory presumption that a maintenance obligation terminates upon remarriage of the party receiving maintenance unless specifically stated to the contrary:

> Unless *otherwise agreed in writing or expressly provided in the decree*, the obligation to pay future maintenance is terminated upon the death of either party or the *remarriage of the party receiving maintenance.*

Minn.Stat. § 518.64, subd. 3 (1982) (emphasis supplied).

We reject appellant's argument based on our reasoning in *Burr v. Burr*, 353 N.W.2d 644 (Minn.Ct.App.1984). In *Burr*, the obligor sought to terminate the maintenance portion of a "family support" award when the obligee remarried. The "family support" award was stipulated to by the parties and incorporated verbatim into the dissolution decree. This court rejected the obligor's argument that Minn.Stat. § 518.64, subd. 3 operated to extinguish his maintenance obligation:

> [T]he decree set forth adopted the parties' stipulation exactly as written, providing that maintenance *"shall be paid ... until"* respondent reaches age 62 or appellant retires at age 62, *"then the family support obligation shall termi-*

*nate."* Maintenance *terminates only* on one of the two listed conditions. Testimony indicates that the parties apparently negotiated this provision based on tax considerations.

*Id.* at 646 (emphasis in original).

The record in *Burr* revealed that the parties, both represented by counsel throughout the negotiations, initially considered but then deleted a provision from the final stipulation which would have terminated maintenance upon the obligee's remarriage. Furthermore, the obligor testified that he never would have agreed to maintenance payments until age 62 if facts about his railroad retirement were known to him at the time. This court noted that this latter statement implied the obligor's attempt to avoid his earlier agreement regardless of his ex-spouse's remarriage. Based on this testimony and the stipulation, freely entered into by the parties, this court upheld the trial court's finding that the parties specifically agreed to continuation of maintenance until the obligee reached the age of 62 or until the obligor retired at age 62, irrespective of the obligee's remarriage.

In this case, the decree, which was entered pursuant to the parties' on-the-record stipulation, contains language similar to that in *Burr* and provides that appellant

> *shall pay* to [respondent], for and as rehabilitative maintenance, the sum of $300.00 per month, commencing May 1, 1984, and continuing for 42 months thereafter. That *upon expiration of the said 42 month period,* all further maintenance shall be terminated.

(Emphasis supplied.) Moreover, in denying appellant's motion to terminate his maintenance obligation, the trial court specifically determined that the parties intended maintenance to continue for 42 months unconditionally:

> It is clear that the terms of the Judgment and Decree were stipulated between the parties. It is also clear from a reading of the transcript of the hearing that the spousal maintenance payments were specifically set forth in amount and

duration as recorded in the Judgment and Decree. It is also clear that as a consideration of entering into said agreement was the [respondent's] position of abandoning a claim for permanent spousal maintenance as well as [appellant's] claim that [respondent] could be self-supporting. It is obvious that those considerations and the considerations of [respondent's] health as well as the length of marriage resulted in the parties agreeing to an unconditional 42 month period of spousal maintenance.

As stated, this finding is based on the parties' testimony and the pretrial hearing, a transcript of which appellant has failed to provide on appeal. Since we cannot review what we cannot see, error will not be presumed in absence of an adequate record. *See Custom Farm Services, Inc. v. Collins*, 306 Minn. 571, 238 N.W.2d 608 (1976).

▮ Appellant attempts to bypass this procedural flaw by arguing that the trial court erred in considering the parties' intent behind the stipulation absent some ambiguity in the decree. *See Landwehr v. Landwehr*, 380 N.W.2d 136, 138–39 (Minn. Ct.App.1985). The circumstances presented here do not compel such a result. Since the oral stipulation was "central" to the award of maintenance, the trial court did not err in considering the parties' testimony at the pretrial hearing as proof of their "voluntary acquiescence in an equitable settlement." *Claybaugh*, 312 N.W.2d at 449. This is not a case involving testimony supplied *after* the stipulation was incorporated into the final decree as evidence of the parties' intent at the time of agreement. *See Landwehr*, 380 N.W.2d at 138. In this case, the testimony considered by the trial court *prefaced* the parties' on-the-record stipulation. As such, it was evidence correlative to the parties' stipulated agreement and their acknowledged understanding of the agreement as fair and equitable. *See Kroeplin v. Haugen*, 390 N.W.2d 872 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. Sept. 25, 1986).

## DECISION

The trial court's finding that the parties specifically agreed to unconditional maintenance payments for a period of 42 months, irrespective of the obligee's remarriage, is not erroneous based on the limited record before us.

Affirmed.

RANDALL, J., concurs specially.

RANDALL, Judge, concurring specially.

I concur with the majority that the decree provided for unconditional maintenance, not automatically terminable on respondent's remarriage. However, I do not find *Burr* controlling. In *Burr* the record showed that during negotiations the parties considered and then rejected inclusion of a clause *specifically* making maintenance terminable on remarriage. This consideration evidenced the parties' intent much more clearly than do the facts in the present case.

The facts in this case are not as strong as they are in *Burr*. The record does not show that a similar discussion occurred in this case. The maintenance provision in the decree is silent as to what, if any, conditions may trigger termination of maintenance. The better practice is for the attorney whose client is to receive maintenance after a remarriage to specify that provision in writing or on the record so the dictates of Minn.Stat. § 518.64, subd. 3 (1982), the controlling statute, are satisfied.

The stipulation and decree in this case are not as clear as they should have been. However, I believe the court properly construed the intent of the parties in finding forty-two consecutive months of maintenance and those months not to be cut off by the obligees remarriage.