*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0803**

State of Minnesota,
Respondent,

vs.

Ronnie Jo Johnson,
Appellant.

**Filed February 8, 2016
Affirmed
Klaphake, Judge\***

Ramsey County District Court
File No. 62-CR-12-2676

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Klaphake, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**KLAPHAKE**, Judge

Appellant challenges the district court's revocation of his probation on his conviction of attempted first-degree criminal sexual conduct. Because the evidence supports the district court's findings that (1) he violated a condition of probation, (2) the probation violation was intentional or inexcusable, and (3) the need for his confinement outweighs the policies favoring probation, we affirm.

**D E C I S I O N**

In November 2012, appellant Ronnie Jo Johnson entered an *Alford/Norgaard* plea to a charge of attempted first-degree criminal sexual conduct. He was sentenced to 84 months in prison, stayed for 15 years, with conditions of probation. The district court continued Johnson on probation after he admitted two probation violations in 2013 and 2014. In October 2014, Johnson admitted a third probation violation based on accessing social media, possessing pornography, and being terminated from sex-offender treatment. On the recommendation of his probation agent, the district court again continued him on probation, ordering that Johnson serve 150 days in the Ramsey County workhouse, "be furloughed to Zumbro House, upon acceptance to that program," "continue there in a secure group-home setting," and "comply with the Zumbro House policies and procedures." In November 2014, Johnson's probation agent alleged that he had violated probation a fourth time by failing to reside at Zumbro House and refusing to comply with its policies. The district court held a contested probation-revocation hearing, revoked Johnson's probation, and ordered his sentence executed.

When an offender violates a condition of probation, the district court may continue probation, revoke probation and impose the stayed sentence, or order intermediate sanctions. Minn. Stat. § 609.14, subd. 3 (2014). Before revoking probation, the district court must "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). Failure to address all three *Austin* factors requires a reversal and remand, even if the evidence was sufficient to support the revocation. *State v. Modtland*, 695 N.W.2d 602, 606-08 (Minn. 2005) (rejecting this court's application of a "sufficient-evidence exception" to the requirement for *Austin* findings). These required findings are designed to ensure that revocation is not "a reflexive reaction to an accumulation of technical violations, but rather is based on "a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251 (quotation omitted). This court reviews the district court's analysis of the *Austin* factors for an abuse of discretion. *Modtland*, 695 N.W.2d at 605. But whether the district court has made the required findings presents a question of law, which we review de novo. *Id*. Johnson challenges the district court's findings as to each of the *Austin* factors.

Johnson argues that the evidence did not show that he violated a condition of probation, the first *Austin* factor. He maintains that because the relevant probation condition provided that he be "furloughed to Zumbro House, upon acceptance to that program," he could not have violated that condition without acceptance to Zumbro House. But the president of Zumbro House testified that he did not accept Johnson into that

3

program because, during the course of a 45-minute interview, Johnson did not assume responsibility for his original offense and stated that he did not want or need the level of supervision required at Zumbro House. Although the district court recognized that Johnson participated in the screening process, his failure to gain acceptance to Zumbro House constitutes a probation violation because it was based on his stated unwillingness to enter the program. *See State v. Muhlenhardt*, 403 N.W.2d 638, 639 (Minn. 1987) (holding that the defendant's conduct violated his probation requirement to enter a certain treatment program when he "did not make a good faith effort to gain admission to the program and … in fact did what he could to avoid being accepted into the program"); *State v. Rock*, 380 N.W.2d 211, 213 (Minn. App. 1986) (holding that when a court-ordered treatment program would not accept the defendant because of his unwillingness to work with the program, his actions reflected a willful violation of probation conditions), *review denied* (Minn. Mar. 27, 1986). Therefore, the district court did not abuse its discretion by determining that Johnson violated a condition of probation.

As to the second *Austin* factor, the district court found that Johnson committed an intentional violation of probation because he stated that he was not interested in complying voluntarily with the level of supervision required at Zumbro House. Johnson points out that at the very end of the screening interview, he told the interviewer that he could "work with" that level of supervision. But this court defers to the district court's credibility determinations. *See State v. Losh*, 694 N.W.2d 98, 102 (Minn. App. 2005) (deferring to district court's credibility determinations in probation-revocation proceeding), *aff'd on other grounds*, 721 N.W.2d 886 (Minn. 2006). The district court did not find Johnson's

4

statement credible and instead credited the interviewer's testimony that he believed that once Johnson entered Zumbro House, he would probably not "buy into" the level of supervision required to live there.

Johnson notes that the interviewer also denied him admission to Zumbro House because he failed to accept responsibility for his offense. He points out that he entered an *Alford* or *Norgaard* plea, which does not require him to acknowledge responsibility for his crime. *See State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994) (stating that a defendant who enters an *Alford* plea maintains his innocence, but pleads guilty because the record establishes, and the defendant reasonably believes, that the state has sufficient evidence to obtain a conviction); *Williams v. State*, 760 N.W.2d 8, 12 (Minn. App. 2009) (reciting grounds for a *Norgaard* plea, including the defendant's assertion of lack of memory on essential elements of the offense), *review denied* (Minn. Apr. 21, 2009). But the district court did not find that Johnson's intentional violation of probation related to a failure to take responsibility for his offense. Rather, based on the record, the district court found that Johnson was unable to commit to the level of supervision required in a program that could meet his need for treatment in a secure setting. *See Modtland*, 695 N.W.2d at 608 (stating that district courts must "convey their substantive reasons for revocation and the evidence relied upon"). The district court did not abuse its discretion by finding that the second *Austin* factor was satisfied.

The third *Austin* factor requires the district court to "find that [the] need for confinement outweighs the policies favoring probation." 295 N.W.2d at 250. A district court may satisfy the third *Austin* factor if any one of three sub-factors is present:

5

(1) confinement is required to protect the public from additional criminal activity by the offender; (2) the offender is in need of correctional treatment which can be most effectively provided by confinement; or (3) it would unduly depreciate the seriousness of the violation if probation was not revoked. *Id*. at 251.

The district court found that the third *Austin* factor was met because policies favoring probation and rehabilitation had prompted probation to seek a placement for Johnson outside of a correctional setting, but that he could not be allowed to be left unsupervised in the community consistent with public safety. The district court also found that Johnson needed to be held in the correctional system until probation could find a level of supervision consistent with public safety outside of that system.

Johnson argues that the district court's findings do not reflect consideration of any listed *Austin* sub-factor. *See id*. We disagree. The district court's findings sufficiently address the first *Austin* subfactor: that confinement is necessary to protect the public from further criminal conduct. *See id*.

Johnson also maintains that the record does not support the district court's finding on the third *Austin* factor because his probation agent did not attempt an alternative placement. But the district court found that Zumbro House had the appropriate level of supervision for Johnson. The probation agent testified that a comparable program was not available in the community, and that she had previous clients who had reoffended while residing in less-secure group homes. Based on this record, the district court did not abuse

its discretion by finding that the need for confinement outweighed the policies favoring probation, and the requirements of the third *Austin* factor were met.

**Affirmed.**