**In Re the Marriage of Yi Ning MA, co-petitioner, Appellant,**

v.

**Mei Fang MA, co-petitioner, Respondent.**

**No. C9–91–1997.**

Court of Appeals of Minnesota.

April 14, 1992.

Jerome D. Ciresi, St. Paul, for appellant.

Karim El–Ghazzawy, Minneapolis, for respondent.

Considered and decided by KLAP-HAKE, P.J., and FORSBERG and MULAL-LY,* JJ.

---

## OPINION

KLAPHAKE, Judge.

Appellant Yi Ning Ma challenges the trial court's refusal to vacate the parties' dissolution stipulation. Although he petitioned for the dissolution, appellant now contends there is no marriage to dissolve because the parties' marriage in the People's Republic of China is not valid under Minnesota law. Appellant also argues the court erred by awarding respondent Mei Fang Ma a lien against his interest in property held in joint tenancy with persons not parties to the dissolution action. We affirm, and award attorney fees to respondent.

## FACTS

Both parties are natives of the People's Republic of China. Appellant entered the United States in 1983 and has permanent residency status. Appellant returned to China temporarily in 1986, where he met and married respondent. Appellant returned to the United States in November of 1986, but respondent did not arrive here until June of 1988. Appellant represented to the U.S. Immigration and Naturalization Service that respondent was his wife.

Appellant served respondent with a petition for dissolution of marriage on March 29, 1990. The petition states that the parties were "duly married" in Canton, China, and ever since have been and now are husband and wife. Appellant stated in a November 9, 1990 affidavit that he returned to China in 1986 for the purpose of finding a wife and the parties were married there.

Both parties were represented by counsel at a prehearing conference on June 17,

1991. A court-appointed interpreter was present, as well as appellant's own interpreter and his brother. After four hours of negotiations, the parties reached a settlement, which appellant's counsel read into the record.

The parties agreed to waive spousal maintenance and agreed that each party would keep the personal property in his or her possession. Appellant received his interest in real property in St. Paul and agreed to pay respondent $7,500, secured by a lien on his interest in the St. Paul property. The parties agreed to pay their own attorney fees and costs.

Through the court-appointed interpreter both parties advised the court that they had heard and understood the agreement and had had an adequate opportunity to discuss it with their respective counsel. Both parties indicated they believed the agreement was a fair, just and equitable settlement. Appellant was then excused and respondent obtained a default dissolution. At the default hearing respondent testified that the parties were married on October 20, 1986, in the People's Republic of China.

After retaining new counsel, appellant moved to vacate the stipulation. In his supporting affidavit, appellant stated he had not understood the terms of the stipulation and stated the parties' marriage was not valid in Minnesota. Respondent submitted a copy of the parties' Chinese marriage certificate. In a supplemental affidavit, appellant stated the certificate was not proof of marriage because, in China, a couple may obtain a certificate simply by advising the registry officer that they consider themselves married. The trial court denied the motion to vacate, and this appeal followed.

## ISSUES

1. Did the trial court err in ruling that the parties' Chinese marriage was valid?

2. Did the trial court abuse its discretion in refusing to vacate the stipulation?

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

3. Should respondent be awarded attorney fees on appeal?

## ANALYSIS

### I.

This court is not bound by the ultimate legal conclusions of a trial court. *See Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 354 (Minn.1977). In reviewing the trial court's determination that the parties were legally married, this court must decide whether the trial court correctly applied the law. *See A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.,* 260 N.W.2d 579, 582 (Minn. 1977).

Competent evidence of a marriage includes the admission of such fact by the party objecting to the marriage, cohabitation as married persons, and "any other circumstantial or presumptive evidence from which the fact may be inferred." Minn.Stat. § 602.02 (1990). In this case, the record contains ample evidence of the marriage, including appellant's sworn admissions and the parties' Chinese marriage certificate.

When evidence of a marriage is shown, a strong presumption of its legality arises. *In re Lando's Estate,* 112 Minn. 257, 266, 127 N.W. 1125, 1128 (1910). The burden of proof shifts to the objecting party to overcome this presumption. *Id.*

A foreign marriage may be recognized in Minnesota even if all the statutory requirements for a valid marriage in Minnesota were not fulfilled. In determining whether to recognize a foreign marriage, our supreme court has adopted the following rule:

> The validity of a marriage normally is determined by the law of the place where the marriage is contracted. If valid by that law, the marriage is valid everywhere unless it violates a strong public policy of the domicile of the parties.

*Laikola v. Engineered Concrete,* 277 N.W.2d 653, 655–56 (Minn.1979) (quoting *In re Estate of Kinkead,* 239 Minn. 27, 30, 57 N.W.2d 628, 631 (1953)).

In *Laikola,* the court held that common-law marriages cannot be consummated by Minnesota residents who temporarily visit in a state that allows common-law marriages, but such marriages may be recognized if the parties took up residence in the state. *Laikola,* 277 N.W.2d at 658. In this case, we reject appellant's argument that the parties entered into a void common-law marriage. The evidence shows that a *ceremonial* marriage occurred. Even if there are fewer procedural requirements for a ceremonial marriage in China as compared to Minnesota, Minnesota would recognize the marriage unless such recognition is contrary to a strong public policy. *See Bogen v. Bogen,* 261 N.W.2d 606, 609 (Minn.1977) (recognizing Nebraska marriage that would not have been valid under former Minn.Stat. § 517.03 because it was contracted within six months after husband's Minnesota dissolution).

Appellant clearly has failed to meet his burden of proof to rebut the presumption of a valid marriage. Appellant presented no evidence of the requirements for a valid marriage under Chinese law or that the marriage was not contracted legally in China. *See* Minn.Stat. § 599.08 (1990) (existence and tenor or effect of all foreign laws are issues for court). In addition, appellant failed to establish that a valid Chinese marriage violates a strong public policy of this state. We conclude the trial court properly recognized the parties' marriage.

### II.

A trial court's refusal to set aside a stipulation will be upheld if the trial court has not abused its discretion. *Kroeplin v. Haugen,* 390 N.W.2d 872, 875 (Minn.App. 1986), *pet. for rev. denied* (Minn. Sept. 25, 1986). A four-factor test is used in determining whether a party properly entered into a stipulation:

(1) Did the party have competent representation of counsel;

(2) Did extensive and detailed negotiations occur;

(3) Did the party agree to the stipulation in open court; and

(4) When questioned by the judge, did the party acknowledge understanding the terms and that they were fair and equitable?

*Cadle v. Cadle,* 457 N.W.2d 736, 738 (Minn. App.1990).

Here, the record supports the trial court's conclusion that appellant had competent representation. We do not find former counsel's failure to investigate the validity of the marriage to constitute incompetence where appellant represented he was married and engaged counsel to begin a dissolution action.

Appellant also contends he was confused because of the language barrier. However, two interpreters were present during the negotiations and we find no indication in the record that appellant expressed confusion or uncertainty regarding the terms of the relatively simple stipulation. Indeed, appellant specifically indicated he understood the stipulation and agreed the terms were fair and equitable.

Finally, appellant argues the trial court lacked authority to award respondent a lien against his joint tenancy interest in real property to secure the property settlement award. The parties stipulated to the lien, and the decree specifies that it attaches only to appellant's interest in the property. Appellant cites no authority for the proposition that a lien cannot attach against a joint tenancy interest. *Cf. Gau v. Hyland,* 230 Minn. 235, 242, 41 N.W.2d 444, 448 (1950) (old-age assistance lien upon real property attaches only to the recipient's joint tenancy interest). We conclude appellant's argument is without merit.

### III.

Respondent seeks an award of attorney fees, arguing that she has had to dissipate her property award to defend against appellant's meritless challenge to the validity of the marriage. This court may award fees if a party has asserted a claim or defense that is frivolous and costly to the other party. Minn.Stat. § 549.21, subd. 2 (1990). Moreover, in dissolution actions attorney fees may be awarded against a party who unreasonably contributed to the length or expense of the proceeding. Minn.Stat. § 518.14 (1990).

In this case, appellant's attack on the validity of the marriage unreasonably contributed to the length and expense of the proceeding. Accordingly, we award respondent $1,000 in attorney fees incurred on appeal.

### DECISION

The trial court properly found that the parties' marriage was valid, and acted well within its discretion in refusing to vacate the stipulation. We affirm, and award respondent $1,000 for attorney fees incurred on appeal.

Affirmed.